UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

LIFE Rehab Services, Inc., a
Minnesota corporation; Medical
Pain Management, a Minnesota
corporation; Physicians' Diagnostics
& Rehabilitation, a Minnesota
corporation; and Medical Advanced
Pain Specialists, a Minnesota
corporation, on behalf of themselves
and all others similarly situated,

Plaintiffs,

vs.

Allied Property & Casualty Insurance
Company, AMCO Insurance Company,
Depositors Insurance Company, and
Nationwide Insurance Company of
America,

Defendants.          Civ. No. 05-1279 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion for Summary Judgment. A Hearing on the Motion was conducted, at which time, the Plaintiffs appeared by David B. Ketroser, and Wood R. Foster, Jr., Esqs., and the Defendants appeared by Allen I. Saeks, and Erin C. Skold, Esqs.

After the close of that Hearing, we invited the parties to address the District Court's recent decision, in Alpine Glass, Inc. v. Illinois Farmers Ins. Co., 2006 WL 3486996 (D. Minn., December 4, 2006)("Alpine Glass"), which neither of the parties had cited in their earlier submissions. See, Docket No. 69. Since the same critical legal issue -- the assignability of rights and duties under an insurance policy -- was decided in Alpine Glass, and confronts us here, and since the ruling, in Alpine Glass, was rendered by the same District Court as is assigned to this case, we wanted to be fully informed on that issue, and particularly, as to its impact on the Defendant's Motion for Summary Judgment.

Having closely reviewed the parties' original, and supplemental briefings, we conclude that, as the ruling of a Court of superior jurisdiction, Alpine Glass controls the disposition of the Defendants' Motion. See, e.g., Tenet v. Doe, 544 U.S. 1, 11

(2005)("In a far closer case than this, we observed that if the 'precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'"), quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989). Nonetheless, we respectfully hold the firm conviction that the legal interpretation in Alpine Glass, insofar as it addresses an agreement of contracting parties to prohibit the assignability of rights and duties under an insurance policy, does not accurately convey the import of the governing law of Minnesota.[1]

Given the obvious tension between our obligation to follow precedent, until such time as it is modified by a Court of superior jurisdiction, and our obligation to follow the rule of law, as we responsibly perceive it, we have adopted the approach

---

[1]"State law controls the construction of insurance policies when a federal court has jurisdiction based upon diversity of citizenship." J.E. Jones Construction Co. v. Chubb & Sons, Inc., --- F.3d ---, 2007 WL 1374743 at *3 (8th Cir., May 11, 2007), citing Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993); see also, Lefler v. General Casualty Co. of Wisconsin, 260 F.3d 942, 945 (8th Cir. 2001)("State law controls the construction of insurance policies when a federal court is exercising diversity jurisdiction."), quoting Bell v. Allstate Life Ins. Co., 160 F.3d 452, 455 (8th Cir. 1998). Here, our jurisdiction is solely predicated upon the diversity of the parties' respective citizenships.

- 3 -

that was recently commended by the United States Supreme Court in <u>Eberhart v. United States</u>, 546 U.S. 12, --, 126 S.Ct. 403, 407 (2005).  There, the Court observed that the "prudent course" was not to "force[] the issue by upsetting what the [lower court] took to be [] settled precedents," nor to "bur[y] the issue by proceeding in a summary fashion," but rather, to facilitate review "[b]y adhering to its understanding of precedent, yet plainly expressing its doubts."  <u>Id.</u>  Here, our Report does not constitute a final adjudication but, nonetheless, we proceed with the "prudent course," out of deference to the District Court.[2]

For reasons which follow, were we to approach this issue as a matter of first impression, we would recommend that the Defendants' Motion for Summary Judgment be granted.  However, if the District Court is not so persuaded, and concludes that its ruling, in <u>Alpine Glass</u>, is dispositive of the issues here presented,

---

[2]This course seems particularly prudent where, as here, another Court in this District has adopted the ruling in <u>Alpine Glass</u>, without further exploration.  See, <u>Alpine Glass, Inc. v. American Family Insurance Co.</u>, 2007 WL 1152982 at *6 (D. Minn., March 12, 2007)(R&R); <u>Alpine Glass, Inc. v. American Family Insurance Co.</u>, 2007 WL 1152931 at *2-3 (D. Minn., April 18, 2007)(adopting R&R).

We make plain, however, that we do not so much as intimate that <u>Alpine Glass</u> was wrongly decided, as there are factors, which necessarily influenced that decision, and which are not present here, that we later detail.  See, <u>Footnote 11</u>, infra.

- 4 -

then the Defendants are not entitled to Judgment as a matter of law, and their Motion should be denied.

## II. Factual and Procedural Background

The Defendants insure patients who are treated by the Plaintiffs.  As a part of that treatment, the patients routinely sign "assignment of benefit" agreements, by which they assign to the Plaintiffs, among other health care providers, the right to receive payments, for the covered medical expenses, from the Defendants.  The insurance policies in question contain an anti-assignment provision, which reads as follows:

> Your rights and duties under this policy may not be assigned without our written consent.[3]

Notwithstanding those assignments of claims, the Defendants have refused to deal directly with the Plaintiffs, and have paid the benefits due, under the policies, directly to the insureds, who must then deal with the Plaintiffs.  On behalf of a putative class, the Plaintiffs seek a declaration that the anti-assignment provisions are ineffectual, and that the Defendants must directly interact with the Plaintiffs in resolving the claims for

_____

[3]The only variant is in the Policy for Patient H, which contains language that states as follows: "No interest in this policy can be transferred without our written consent."  See, Affidavit of E.K. Cottrell, Docket No. 59, at Exhibit 7, p. 8.  For the purposes of this Motion, we find that the language of the Policy for Patient H is substantively the same as the language employed in the other policies at issue.

benefits that arise from the medical care provided to the Defendants' insureds, because those insureds have signed "assignment of benefit" agreements with the Plaintiffs.

Previously, the Defendants moved to dismiss the Plaintiffs' claims, arguing that, in view of the anti-assignment provisions in the pertinent insurance policies, the Plaintiffs did not have standing to allege that the Defendants must directly negotiate with the Plaintiffs.  In their Memorandum in Response to the Defendants' Motion to Dismiss, the Plaintiffs voluntarily dismissed Count I (enforcement of statutory and common law rights), Count IV (declaratory relief), and Count V (injunctive relief). See, Plaintiff's Memorandum in Opposition, Docket No. 21, at p. 17.  In a Report dated January 6, 2006, see, Docket No. 29, United States Magistrate Judge Jeanne J. Graham, who was previously assigned to this case, recommended that the Defendants' Motion to Dismiss be denied, as the policy language at issue was not in the Record before the Court, and further recommended the dismissal of Count III (account stated) of the Plaintiff's Complaint.  See, LIFE Rehab Services, Inc. v. Allied Property & Casualty Ins. Co., 2006 WL 91334 (D. Minn., January 6, 2006).  The District Court, the Honorable Joan N. Ericksen presiding, who was then assigned to the case, adopted

that Recommendation by Order dated February 22, 2006.  See, <u>Docket No. 37</u>.  Thus,

the only claim remaining to be adjudicated is Count II (breach of contract).

On October 19, 2006, the Defendants moved for Summary Judgment.  See,

<u>Docket No. 55</u>.  Neither party challenges the facts as alleged by the opposing party.

Rather, the Defendants argue that Summary Judgment is appropriate for, under

Minnesota law, the non-assignment clauses, which are contained in the applicable

insurance policies, void the purported assignments upon which the Plaintiffs rely.  The

Plaintiffs disagree.

### III.  <u>Discussion</u>

Adopting a Report and Recommendation ("R&R") dated September 1, 2006,

the District Court, in <u>Alpine Glass</u>, concluded that insureds, under insurance policy

language that is not meaningfully different from that at issue here, could assign the

proceeds from those policies, notwithstanding an anti-assignment provision.  As did

the underlying R&R, the District Court concluded that the Minnesota Supreme

Court's decision, in <u>Travertine Corp. v. Lexington-Silverwood</u>, 683 N.W.2d 267

(Minn. 2004), and an unpublished decision by the Minnesota Court of Appeals, in

<u>Physicians Neck & Back Clinics, P.A. v. Allied Insurance Co.</u>, 2006 WL 1053142

(Minn. App., July 25, 2006), rev. denied (Minn., October 17, 2006), were inapposite.

As did both the R&R, upon which the District Court relied, and the District Court on review of the objections to that R&R, we canvas the law of Minnesota that pertains to the assignability of insurance policy proceeds.

We agree with District Court that "[t]he law of Minnesota (and other states) has long distinguished between the assignment by an insured of its right to **coverage** under an insurance policy and the assignment by an insured (after a loss) of its right to **proceeds** under an insurance policy." Alpine Glass at *2 [emphasis in original], citing Windey v. North Star Farmers Mut. Ins. Co., 43 N.W.2d 99, 102 (Minn. 1950); Rietzner v. State Farm Fire & Cas. Co., 510 N.W.2d 20, 26 (Minn. App. 1993); and In re Estate of Sangren, 504 N.W.2d 786, 790 (Minn. App. 1993). The issue in each of those cases, however, was whether anti-assignment language, that purported to void an insurance policy if an assignment of the policy occurred, would prohibit an assignment of the policy itself, and not whether an assignment of the rights, and duties, under that policy, could be contractually prohibited.[4]

---

[4]As the District Court explained:

> The distinction makes sense.  Allowing an insured to assign the right to coverage would force the company to protect an insured with whom it had not entered a contract -- an

(continued...)

- 8 -

In Windey, a farm building was insured against wind damage.  As here pertinent, "[t]he policy contained provisions that it should become void if * * * the policy should be assigned without the written consent of the insurer endorsed thereon * * *."

---

[4](...continued)

> insured who might present a far greater level of risk than the policyholder.  * * *  By contrast, allowing an insured to assign its right to the proceeds of an insurance policy after a loss has occurred hurts the insurer not at all.    Its obligations are fixed when the loss occurs.   The assignment does not increase or decrease the financial exposure of the company in any way.

Alpine Glass, Inc. v. Illinois Farmers Ins. Co., 2006 WL 3486996 at * 2 (D. Minn., December 4, 2006).

While that explanation justifies a distinction which would prohibit an assignment of the policy, the explanation does not speak to Minnesota's purpose in approving non-assignment provisions generally.   As the Minnesota Supreme Court explained, in Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004), "[t]he primary purpose of clauses prohibiting the assignment of contract rights is to protect the contracting party from dealing with parties he has not chosen to do business with." Here, the Defendants seek to avail themselves of that purpose, by not having to deal with the Plaintiffs directly.

Nor does the distinction, which was identified by the District Court, explain why, under Minnesota law, contracting parties should not be able to agree to prohibit the assignment of their rights and duties, under an insurance policy, in the absence of the insurer's consent.   The Plaintiffs do not assert that such a provision is either unconscionable, or that it effectuates a contract of adhesion, and we are not persuaded that such a prohibition, on the right to contract, should be adopted, at least in the absence of some worthy public policy, or some controlling Minnesota statute.

<u>Windey v. North Star Farmers Mut. Ins. Co.</u>, supra at 100.  In due course, wind damaged the farm building, before all of the conditions were satisfied to transfer the property on a contract for deed.  Subsequently, the conditions were satisfied, and the original owners assigned their insurance policy to a vendee.  When a claim was made for the insurance proceeds, the insurer invoked the anti-assignment language, and argued that the policy was voided by the assignment.  Faced with the draconian consequence of the insurance coverage being voided by an assignment, the Court rejected the insurer's argument, and held as follows:

> Assignment, after loss, of the proceeds of insurance does not constitute an assignment of the policy, but only of a claim or right of action on the policy.  Such an assignment does not void the policy **under a provision that if it is assigned without the insurer's consent it shall become void**.

<u>Id.</u> at 102 [emphasis added].

Notably, the Court was not espousing a public policy, which would render other forms of assignment unlawful -- the Court was simply, and properly, ruling upon the language of an insurance policy which purported to void coverage if an assignment of coverage was attempted.  Notably, here, the Defendants do not seek to void coverage -- indeed, they have paid their insureds for any covered losses -- rather, they simply do not wish

to deal with the Plaintiffs directly, while still preserving the insured's right to coverage and, upon proper proof, proceeds.

In <u>Reitzner</u>, the operative policy stated that an "assignment of this policy shall not be valid unless [the insurer gives its] written consent." <u>Rietzner v. State Farm Fire & Cas. Co.</u>, supra at 26. Implicitly, although not expressly, the Court applied the reasoning of <u>Windey</u>, and rejected the insurer's argument that assignments of the policy violated the policy's provisions, and voided the policy, explaining as follows:

> Appellant did not receive a pure assignment of the policy, but rather, received an assignment of the proceeds due under the policy should the claim be successful. An assignment of insurance monies due on a successful claim does not require the insurance company's written consent. An insurance company has a right to put in its policy a provision that the policy cannot be assigned without its consent, but an insured can put in a claim under a policy and promise the claimed proceeds to another without first checking with the company. See Liberty Mut. Ins. Co. v. American Family Mut. Ins. Co., 463 N.W.2d 750, 755 (Minn. 1990)(an assignment of an insured's interest in an existing claim for benefits pursuant to a contract of insurance is not an assignment prohibited by law).

<u>Id.</u>

Plainly, given the assignment language of the specific policy at issue, the <u>Reitzner</u> Court was not positioned to express a view on the impact that a contractually agreed

upon prohibition on the assignment of an insurance policy's rights and duties would have, since that language was not before the Court.

Ironically, the <u>Reitzner</u> Court cited the Minnesota Supreme Court's decision, in <u>Liberty Mutual Ins. Co. v. American Family Mutual Ins. Co.</u>, 463 N.W.2d 750, 755 (Minn. 1990), for the proposition that "an assignment of an insured's interest in an existing claim for benefits pursuant to a contract of insurance is not an assignment prohibited by law." <u>Id.</u> What the Court held, however, in <u>Liberty Mutual</u>, is that such an assignment of a policy's rights and duties would violate the express provisions of the policy's anti-assignment clause. Given the importance of the Court's decision, in <u>Liberty Mutual</u>, we reviewed the appellate briefs in that case, and have determined that the anti-assignment provision, which was there at issue, provided as follows: "Your [i.e., the insured's] rights and duties under this policy may not be assigned without our written consent." <u>Appellants' Brief and Appendix</u>, at p. A-36. Plainly, that provision is not meaningfully different from the one that is now before us.

In <u>Liberty Mutual</u>, a plaintiff sued a defendant for injuries sustained in an automobile accident. The defendant's insurer, American Family Insurance Co. ("American Family"), provided insurance coverage in the amount of $100,000.00. A Jury returned a Verdict for the plaintiff, and Judgment was entered in favor of the

plaintiff in the amount of $215,154.65, which was plainly in excess of the policy limits. The defendant's insurer, American Family, then negotiated a settlement with the plaintiff, by which the plaintiff agreed to assign "his right and interest in the uninsured motorist and underinsured motorist coverages of his Liberty Mutual policy to American Family, reserving to himself a portion of any recovery in excess of $115,000 and agreeing to use his best efforts to obtain a maximum recovery." Liberty Mutual Ins. Co. v. American Family Mutual Ins. Co., supra at 753. Thereafter, Liberty Mutual sought a Declaratory Judgment that would adjudge, in addition to other matters extraneous here, that the assignment of the policy's rights and duties was void because it did not bear Liberty Mutual's consent.

The Supreme Court agreed with Liberty Mutual, that the attempted assignment was ineffectual, since it violated the provisions of Liberty Mutual's anti-assignment clause. As the Court explained:

> While entitlement to benefits pursuant to uninsured and underinsured motorist coverage depends on the same proof as a cause of action for personal injury against an uninsured or underinsured tortfeasor, assignment of the insured's interest is not, as the lower courts concluded, the assignment of a cause of action for personal injury; it is the assignment of the insured's interest in an existing claim for benefits pursuant to a contract of insurance.

- 13 -

> Hence, the assignment was not an assignment prohibited by law; nevertheless, it did violate the policy provision prohibiting assignment of the insured's rights pursuant to the policy absent the insurer's consent, which was neither sought nor given.  We need not here decide whether the prohibition against assignment is enforceable in all circumstances.   Suffice it to say that because the assignment of the insured's interest in the uninsured/ underinsured motorist coverages raises the same problems of champerty and maintenance that are present in the assignment of a personal injury claim, the policy prohibition against assignment can only be said to advance a public purpose.

Id. at 755-56.

While we find the Court's reference to "champerty and maintenance" curious, as the Court had already determined that the assignment was not an "assignment of a cause of action for personal injury," id. at 256, the unavoidable fact is that the Supreme Court of Minnesota voided an assignment of an insured's "rights and duties" in an insurance policy, the language of which is the same as that contained in the policies at issue here, when that assignment was in violation of an anti-assignment provision.

Since the attempted assignment, in Liberty Mutual, came after the loss, we are unable to meaningfully distinguish the Court's holding, there, from the circumstances we confront here and, if the Minnesota Supreme Court felt that an otherwise lawful assignment of uninsured/underinsured policy rights could be defeated by the parties'

- 14 -

contractual prohibition against such an assignment, since the parties' agreed prohibition was in furtherance of the public policy against "champerty and maintenance," then we are unable to discern how an attempted assignment of medical benefit rights under a policy, after a loss, could be treated differently, or why the parties' contractual anti-assignment provision would not serve the same public purpose that was enunciated in <u>Liberty Mutual</u>.  Consequently, rather than supporting any notion that parties cannot agree to prohibit the assignment of insurance rights and duties, <u>Liberty Mutual</u> affirms that the parties lawfully have that contractual authority.[5]

We find little, in <u>In re Estate of Sangren</u>, supra, to support the notion that parties are not free to preclude an assignment of interests in an insurance policy.  While the

---

[5]In their post-Hearing briefings, the Defendants advanced a concerted effort to distinguish each of the Minnesota cases that the Court relied upon in <u>Alpine Glass</u>, inclusive of the Minnesota Supreme Court's decision in <u>Liberty Mutual Ins. Co. v. American Family Mutual Ins. Co.</u>, 463 N.W.2d 750, 755 (Minn. 1990), which was not addressed by the District Court, but which was cited in the underlying R&R.  On the strength of <u>Liberty Mutual</u>, the Defendants argued that the case makes clear that the Minnesota Supreme Court "did not consider there to be a general prohibition on the enforceability of non-assignment clauses in insurance contracts."  <u>Docket No. 70</u>, at p. 14.  Notwithstanding an opportunity to do so, the Plaintiffs offered no contrary interpretation of the holding in <u>Liberty Mutual</u>, and in fact, neither cited, nor distinguished, any of the Minnesota decisions that were examined in <u>Alpine Glass</u>.

Court, there, considered a waiver of any objection to an assignment, the Court went

on to observe as follows:

> Further, this is not really an assignment of the policy.
> Rather, it is an assignment of the **proceeds** of the policy.
> A claim for proceeds is more a debt, subject to the ordinary
> rules of assignment, than a contract right to insurance
> protection.  See Peterson v. Brown, 457 N.W.2d 745, 748-
> 49 (Minn.App. 1990), pet. for rev. denied (Minn. Aug. 23,
> 1990).

In re Estate of Sangren, supra at 790 [emphasis in original].

By every appearance, the Court was simply reiterating the result in Windey, that an

insurance policy, which prohibits the assignment of the policy, does not prohibit, in

and of itself, the assignment of the proceeds from the policy.[6]

-------------------------------

[6]Although the Court's opinion, in In re Estate of Sangren, 504 N.W.2d 786
(Minn.App. 1993), does not recite the terms of the insurance policy provision at issue,
our research of the appellate briefs disclosed that the anti-assignment provision read
as follows:

> Assignment.   Assignment of this policy will not be valid
> unless we give our written consent.

Appellant's Brief and Appendix, Minnesota Court of Appeals Case No. C5-93-401,
at A-36.

Accordingly, we find nothing apposite in In re Estate of Sangren, since, as was the
case with Windey, the policy in question did not have a prohibition against the
assignment of proceeds from the policy, but simply of the policy itself.

- 16 -

Given the foregoing, we are compelled to conclude that the cases, which were relied upon in the R&R that was adopted by the District Court in <u>Alpine Glass</u>, simply relate to policies which prohibited the assignment of the policies, before the loss occurred, and did not include a specific provision that related to the assignment of the policy's "rights and duties." As <u>Liberty Mutual</u> makes clear, when an anti-assignment provision is present, after a loss has occurred, the Minnesota Supreme Court has enforced the provision's proscriptions, even as to assignments of the rights and duties under the insurance policy. Moreover, if we were doubtful of that proposition, all doubts would be resolved by the Minnesota Supreme Court's ruling, in <u>Travertine Corp. v. Lexington-Silverwood</u>, supra.

In <u>Travertine Corp.</u>, a case which did not involve an insurance policy, James Lennon ("Lennon"), and George Berkey ("Berkey"), performed work for Travertine pursuant to a management agreement. In accordance with that management agreement, Travertine agreed to pay Lennon and Berkey a percentage of the net profits on a project on which Lennon and Berkey worked. The agreement also contained the following non-assignment provision:

> This Agreement shall be binding on the parties and their respective personal representatives, successors and assigns; provided, however, that the rights and obligations of

> Berkey/Lennon shall not be assignable except that Berkey
> may assign to Lennon or Lennon assign to Berkey such
> rights and obligations.

Id. at 269-70.

Subsequently, Berkey assigned all of his rights, under the management agreement, to

Lennon, and thereafter, Lexington-Silverwood obtained a Judgment against Lennon in

a matter unrelated to Travertine. "In settlement of the judgment, Lennon purported to

assign to Lexington-Silverwood his rights to compensation under the management

agreement with Travertine."   Id. at 270.   Given the non-assignment provision,

Travertine resisted the assignment.

Upon Travertine's Motion to Stay Arbitration -- a proceeding that was agreed

upon by the original contracting parties to the management agreement -- the Trial Court

did "not believe that Lennon's agreement to transfer compensation to [Lexington-

Silverwood] constitute[d] an assignment."   Appendix to Brief of the Appellant

Travertine Corp., Minnesota Supreme Court Case No. A03-0210, at App. 00048.  The

Trial Court did not expressly address the anti-assignment provision.  On appeal to the

Minnesota Court of Appeals, however, the anti-assignment provision was addressed

at some length, with the Court concluding that the provision was insufficiently explicit,

since the "management agreement d[id] not explicitly limit Lennon's power to assign,

- 18 -

nor d[id] it explicitly render assignments void." Travertine Corp. v. Lexington-Silverwood, 670 N.W.2d 444, 448 (Minn.App. 2003), rev. granted (Minn., January 20, 2004), rev'd, 683 N.W.2d 267 (Minn. 2004).

On further review, the Minnesota Supreme Court rejected the Court of Appeals' analysis as to the lack of an explicit prohibition against an assignment. Instead, the Court relied upon its earlier decision, in Wilkie v. Becker, 128 N.W.2d 704, 707 (Minn. 1964), as reiterated in Vetter v. Sec. Cont'l Ins. Co., 567 N.W.2d 516, 521 (Minn. 1997). The Supreme Court reasoned as follows:

> In our 1964 decision of Wilkie v. Becker, we explained:
>
> The general rule is that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable. A contract to pay money may be assigned by the person to whom the money is payable, **unless there is something in the terms of the contract manifesting the intention of the parties that it shall not be assigned.**
> Wilkie, 268 Minn. at 267, 128 N.W.2d at 707 (quoting 6 Am.Jur.2d Assignments §16)(emphasis added).
>
> The language emphasized above is crucial. We did not require that the parties use specific terms to preclude assignment, but merely required the parties to include **something** expressing their intent that the contract not be assignable. Because there was nothing in the terms of the contract manifesting the intention of the parties that it was not to be assigned, we upheld the assignment. Wilkie, 268

- 19 -

Minn. at 268, 128 N.W.2d at 708.  We rearticulated this same general rule in our 1997 decision of Vetter v. Security Continental Insurance:

> As a general rule, **and in the absence of a contractual provision to the contrary**, an obligor on a contract may assign all beneficial rights to another, or may delegate his or her duty to perform under the contract to another, without the consent of the obligee.
> 567 N.W.2d at 521 (emphasis added).
>
> Once again, we did not require specific terms or magic words, but merely some indication that the parties intended that the contract not be assigned.
>
> Here the contract provides in relevant part that "**the rights and obligations of Berkey/Lennon shall not be assignable.**" (Emphasis added.)  It is a well-worn maxim that use of the term "shall" reflects a mandatory imposition.  Ind. Sch. Dist. No. 561 v. Ind. Sch. Dist. No. 35, 284 Minn. 426, 436, 170 N.W.2d 433, 440 (1969).  The inclusion of the language quoted above satisfies the requirement that the parties include something in the terms of the contract manifesting the intention of the parties that it shall not be assigned.  Vetter, 567 N.W.2d at 521; Wilkie, 268 Minn. at 267, 128 N.W.2d at 707.  Therefore, we hold that the contract between Travertine and Lennon is nonassignable.

Travertine Corp. v. Lexington-Silverwood, supra, 683 N.W.2d at 272 [emphasis in original].

The R&R, which was adopted in Alpine Glass, distinguished the Minnesota Supreme

Court's holding in Travertine because it "did not involve proceeds, it did not involve

- 20 -

an insurance policy," and because the Court "never cited any of its decisions involving the assignability of the proceeds of an insurance policy."  Alpine Glass, Inc. v. Illinois Farmers Ins. Co., supra at *13.[7]

Although Travertine involved no insurance policy, the other two (2) distinctions, which were noted in the R&R, do not seem tenable.  First, there can be little doubt that Travertine involved "proceeds."   Following the Supreme Court's decision in Travertine, Lexington-Silverwood petitioned for a rehearing, arguing that "the Court failed to recognize the general rule stated in Wilkie, and other authority cited in Wilkie and [Lexington-Silverwood's] Brief, that the money due or to become due under a contract may be assigned even though the contract itself may not be assignable." Lexington-Silverwood's Petition for Rehearing, Minnesota Supreme Court Case No.

-------------------------

[7]In our considered view, however, a citation to Windey v. North Star Famers Mut. Ins. Co., 43 N.W.2d 99 (Minn. 1950), Rietzner v. State Farm Fire & Cas. Co., 510 N.W.2d 20 (Minn.App. 1993), or In re Estate of Sangren, supra, would have been superfluous, since none of those decisions pertained to an anti-assignment provision that prohibited the assignment of rights and duties under an insurance policy.  While the Minnesota Supreme Court, in Travertine, also did not cite to Liberty Mutual Ins. Co. v. American Family Mutual Ins. Co., supra, which gave effect to an anti-assignment provision that precluded an assignment of proceeds in an insurance policy, we conclude that the oversight -- if that is what it was -- could merely be an inadvertence in opinion writing, rather than some implicit rejection of the ruling in Liberty Mutual, since the result that was reached in Travertine is entirely consistent with that rendered in Liberty Mutual.

A03-210, at p. 1. Lexington-Silverwood also argued that "the Court further determined that the nonassignment language contained in the Management Agreement was sufficient to preclude Lennon from assigning his right to compensation, notwithstanding the general nature of the nonassignment language," and, "[i]n so holding, the Court rejected the clear weight of authority that requires specific language prohibiting assignment of the right to receive compensation." Id. at p. 2. Notwithstanding these arguments, which plainly reflect that "proceeds" were the object of the purported assignment in Travertine, the Minnesota Supreme Court denied a rehearing.

Secondly, Travertine expressly relies upon Vetter v. Sec. Cont'l Ins. Co., supra at 521, which explained the application of contract law, to insurance policies, as follows:

> Insurance policies are contracts and unless there are statutory provisions to the contrary, general principles of contract law apply. Waseca v. Mut. Ins. Co. v. Noska, 331 N.W.2d 917, 926 (Minn. 1983). As a general rule, and in the absence of a contractual provision to the contrary, an obligor on a contract may assign all beneficial rights to another, or may delegate his or her duty to perform under the contract to another, without the consent of the obligee. See Epland v. Meade Ins. Agency Assoc., Inc., 564 N.W.2d 203, 207 (Minn. 1997); see also, 3 Williston on Contracts §411, at 13-20 (3d ed. 1960) * * *.

- 22 -

Plainly, the Court, in <u>Travertine</u>, would not cite to an insurance decision if the Court believed that insurance policies were subject to different rules of interpretation as to anti-assignment provisions.[8]

Notwithstanding that <u>Travertine</u> did not directly involve an insurance policy, we have no basis to find the decision inapposite on that score. Indeed, the District Court accepted that <u>Travertine</u> "stands for nothing more than the proposition that a clear anti-assignment clause in a contract will be enforced," while "[t]he anti-assignment clause in the Farmers policy d[id] not clearly prohibit the assignment of proceeds, as opposed to coverage." <u>Alpine Glass, Inc. v. Illinois Farmers Ins. Co.</u>, supra at *3. However, the language in <u>Travertine</u>, which the Minnesota Supreme Court found to be sufficient to uphold the anti-assignment of contractual proceeds, simply stated that

---

[8]Indeed, as the Defendants correctly note, the <u>Travertine</u> Court cited to another insurance case, albeit from the State of Colorado, in which the Colorado Supreme Court enforced an anti-assignment provision under factual circumstances that are closely analogous to those presented here. See, <u>Travertine Corp. v. Lexington-Silverwood</u>, supra, 683 N.W.2d at 274 n. 3, citing <u>Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.</u>, 874 P.2d 1049, 1055 (Colo. 1994), for "upholding anti-assignment provision [in an insurance policy] as preventing any effective assignment because '[w]hen a contractual provision is clear and unambiguous, courts should neither rewrite it nor limit its effect by a strained construction.'" Again, if there is an interpretive line of demarcation, so as to subject insurance policies to different rules of construction than other contracts, surely the Minnesota Supreme Court would not have cited <u>Chiropractic Centers</u> illustratively.

"the rights and obligations of Berkey/Lennon shall not be assignable," except as between Berkey and Lennon.   The Minnesota Supreme Court found no ambiguity in that provision.[9]

By comparison, in <u>Alpine Glass</u>, the anti-assignment provisions read:  "Interest in this policy may not be assigned without our written consent," see <u>Docket No. 38,</u> Civ. No. 06-1148 (PJS/RLE), at p. 4; while the policies, which are at issue here, have anti-assignability clauses which read:  "Your rights and duties under this policy may not be assigned without our written consent."   We are unable to distinguish the

---

[9]We accept, of course, that, "[i]f an ambiguity in the language of an insurance contract exists, then the court is obliged to construe the ambiguity against the insurer, and in favor of the insured."   <u>Adzick v. Unum Life Ins. Co.</u>, 351 F.3d 883, 887 (8th Cir. 2003)(applying Minnesota law), citing <u>Noran Neurological Clinic, P.A. v. The Travelers Indem. Co.</u>, 229 F.3d 707, 709 (8th Cir. 2003), and <u>American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire and Cas. Co.</u>, 551 N.W.2d 224, 227 (Minn. 1996).   "'However, a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage,' Farkas v. Hartford Accident & Indem. Co., 285 Minn. 324, 173 N.W.2d 21, 24 (1969)(citations omitted)," and, "[i]n undertaking such an assessment, the court must fastidiously guard against any invitation to 'create ambiguities' where there are none."   <u>Id.</u> at 887-88, citing <u>Noran Neurological Clinic, P.A. v. The Travelers Indem. Co.</u>, supra at 708.   Since the Minnesota Supreme Court found no ambiguity in a similar anti-assignment provision, and the Minnesota Court of Appeals also found no ambiguity in a provision identical to those here, we are hard-pressed to discern how an insured could not reasonably understand that assignments of rights and duties under the policies, here, were impermissible without the insurer's consent, or how, notwithstanding that provision, the insureds could have a reasonable expectation that assignments would be permitted without consent from the insurer.

- 24 -

prohibitory language, which was at issue in <u>Travertine</u>, from that at issue in either <u>Alpine Glass</u>, or here. While we understand that the emphasis of the <u>Travertine</u> Court was on the mandatory nature of the word "shall," as used in the pertinent anti-assignment provision there, we conclude that "may not," as used in the policies that we here confront, is no less mandatory. See, e.g., <u>State v. Mogren</u>, 2006 WL 923702 at *1 (Minn. App., April 11, 2006)("This appeal involves no dispute as to the clear meaning of the statute; as the state suggests, the statute's mandatory language ("may not") eliminates discretion on the part of the sentencing judge."); <u>Watson v. United Services Automobile Ass'n</u>, 566 N.W.2d 683, 690 (Minn. 1997)("Minnesota Statutes section 65A.01 was intended to secure uniformity in fire insurance policies * * *" and "[u]se of the statutory form is mandatory, and its provisions may not be omitted, changed, or waived."), citing <u>Heim v. American Alliance Ins. Co. of New York</u>, 180 N.W. 225, 227 (Minn. 1920). Since <u>Travertine</u>, and <u>Wilkie</u>, only require that the contracting parties include "**something** in the terms of the contract manifesting the intention of the parties that it shall not be assigned," we conclude that the "something" requirement is satisfied with the language employed by the parties here. See, <u>Travertine Corp. v. Lexington-Silverwood</u>, supra at 272.

- 25 -

Most recently, the Minnesota Court of Appeals addressed the precise issue, that we here face, in Physicians Neck & Back Clinics, P.A. v. Allied Insurance Co., supra, where the operative anti-assignment provision was identical to that presented here, by stating as follows:

> Your rights and duties under this policy may not be assigned without our written consent.

Id. at *4.

Viewing the issue as being governed by the Minnesota Supreme Court's decision in Travertine, the Minnesota Court of Appeals concluded that "the nonassignment provision of the Allied insurance policy is enforceable." Id.

The R&R, which was adopted in Alpine Glass, did not find Physicians to be controlling for several reasons. First, Physicians was unpublished and, according to the R&R, "[t]he Court of Appeals concluded that Travertine overruled the Supreme Court's 1950 decision, despite the fact that the Travertine decision never mentions Windey and never discussed the assignment of the contract at issue as an assignment of proceeds." Alpine Glass, Inc. v. Illinois Farmers Ins. Co., supra at *13. We find no indication, in Physicians, that the Minnesota Court of Appeals characterized Travertine as overruling Windey, either directly, or implicitly. Rather, we read Physicians as finding Windey inapposite for the reasons we have previously detailed --

namely, that the <u>Wilkie</u>, rather than the <u>Windey</u>, line of authority governed.  Moreover, as we have previously addressed, the briefing before the Minnesota Supreme Court, in <u>Travertine</u>, can leave no doubt that the Court, there, understood that it was analyzing an attempted assignment of proceeds -- albeit from a management contract, rather than from an insurance policy.

We find nothing, in any of the cases cited in the R&R, or elsewhere, that holds, in the absence of a governing statute, that insurance policies should be construed according to some other principles than contract law.  Indeed, as we have previously noted, see, <u>Vetter v. Sec. Cont'l Ins. Co.</u>, supra at 521, just the opposite is true.  See also, <u>Illinois Farmers Ins. Co. v. Glass Service Co.</u>, 683 N.W.2d 792, 799 (Minn. 2004)("The interpretation of insurance contracts is governed by general principles of contract law."), citing <u>Thommes v. Milwaukee Ins. Co.</u>, 641 N.W.2d 877, 879 (Minn. 2003); <u>Waseca Mutual Ins. Co. v. Noska</u>, 331 N.W.2d 917, 926 (Minn. App. 1983) ("Subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts."), citing <u>St. Paul School Dist. No. 625 v. Columbia Transit Corp.</u>, 321 N.W.2d 41, 45 (Minn. 1982), and <u>Bobich v. Oja</u>, 104 N.W.2d 19 (Minn. 1960).

Further, the applicable statutory law does not delimit the parties' contractual

right to prohibit the assignment of insurance proceeds for, in fact, the statutory law

contemplates that the insurer may, but need not, make any medical reimbursement

payments to the medical source provider directly, or to the insured.   Specifically,

Minnesota Statutes Section 65B.54, Subdivision 1, provides for the payment of basic

economic loss benefits, under an insurance policy, as follows:

> Basic economic loss benefits are payable monthly as loss
> accrues.   Loss accrues not when injury occurs, but as
> income loss, replacement services loss, survivor's
> economic loss, survivor's replacement services loss, or
> medical or funeral expense is incurred. * * * **Medical or
> funeral expenses may be paid by the reparation obligor
> directly to persons supplying products, services, or
> accommodations to the claimant**.

[Emphasis added], [10] see also, <u>Illinois Farmers Ins. Co. v. Glass Service Co.</u>, supra at
796; <u>Glass Service Co., Inc. v. Progressive Speciality Ins. Co.</u>, 603 N.W.2d 849, 852
n. 2 (Minn. App. 2000).

If, as the Plaintiffs stress, the long-held Minnesota policy is to prohibit parties, to an

insurance contract, from agreeing to non-assignment provisions relating to the

proceeds of the policy, then it would seem proper for the Minnesota Legislature to

---

[10]A "reparation obligor" is "an insurer or self-insurer obligated to provide the
benefits required by section 65B.41 to 65B.71, including natural persons, firms,
partnerships, associations, corporations, governmental units, trusts and syndicates."
<u>Minnesota Statutes Section 65B.43, Subdivision 9</u>.

remove any discretion on the insurer's -- that is, the "reparation obligor's" part -- to pay those proceeds to anyone other than the assignee of the claimant.  Obviously, that was not the provision that the Legislature enacted, as the Legislature employed a permissive "may," and not a mandatory "shall."[11]  See, e.g., <u>Curiskis v. City of Minneapolis</u>, 729 N.W.2d 655, 659 (Minn. App. 2007)("'[M]ay' is permissive, as opposed to 'must' and 'shall' which are mandatory."), citing <u>Minnesota Statutes Section 645.44, Subdivisions 15, 15a, and 16</u>; <u>Koch Refining Co. v. United States</u>

---

[11]In contrast, in <u>Alpine Glass</u>, the R&R relied upon Minnesota Statutes Section 72A.201, Subdivision 6(14), as establishing "that it is an 'unfair settlement practice' for an 'insurer to [fail] to provide payment to the insured's chosen vendor based upon a competitive price that is fair and reasonable within the local industry at large.'" <u>Alpine Glass, Inc. v. Illinois Farmers Ins. Co.</u>, 2006 WL 3486996 at *12 (D. Minn., December 4, 2006).  No similar provision applies to the payment of proceeds here.

Further, in <u>Alpine Glass</u>, it appears that the insurer had been making payments directly to the assignee glass installers, as the installers were arguing underpayments. Such direct payments would seem to undercut the insurer's argument that the assignments, upon which the asserted underpayments were made, were not legally effective.  A similar argument -- whether in the nature of waiver or estoppel -- is unavailable here, as no one asserts that the Defendants have made any payments directly to the Plaintiffs.

As a consequence of these distinctions, and perhaps others, we are unable to say that, had the District Court, in <u>Alpine</u>, adopted the legal rulings in <u>Travertine</u>, and <u>Physicians</u>, a ruling in favor of the assignees, in <u>Alpine</u>, would not have resulted anyway.

<u>Dep't of Energy</u>, 497 F. Supp. 879, 891 (D. Minn. 1980)(noting that "may" is a permissive word); <u>Klein Bancorporation, Inc. v. C.I.R.</u>, 581 N.W.2d 863, 866 (Minn. App. 1998).

Lastly, we do not overlook the undeniable fact that <u>Physicians</u> was an unpublished decision of the Minnesota Court of Appeals and, as such, is not controlling on the issues presented here. As the Minnesota Supreme Court explained, in <u>Vlahos v. R&I Construction of Bloomington, Inc.</u>, 676 N.W.2d 672, 676 n. 3 (Minn. 2004):

> [W]e pause here to stress that unpublished opinions of the court of appeals are not precedential. See Minn.Stat. §480A.08, subd. 3(c)(2002); Powell v. Anderson, 660 N.W.2d 107, 123 (Minn. 2003). The danger of miscitation is great because unpublished decisions rarely contain a full recitation of the facts. See Dynamic Air, Inc. v. Bloch, 502 N.W.2d 796, 801 (Minn.App. 1993). Unpublished decisions should not be cited by the district courts as binding precedent.

While not controlling, unpublished decisions of the Minnesota Court of Appeals can be of persuasive value, and Courts in this District have found such decisions to be persuasive. See, e.g., <u>Security Life Ins. Co. of America v. Stewart</u>, 2002 WL 1835643 at *5 (D. Minn., August 9, 2002), citing, and quoting, <u>Dynamic Air v. Bloch</u>, 502 N.W.2d 796, 800-01 (Minn.App. 1993); <u>Marvin Lumber and Cedar Company v. PPG</u>

Industries, Inc., 1998 WL 1056973 at *21 n. 15 (D. Minn. 1998)(finding an unpublished opinion "instructive, not as precedent, but as an accurate, and as a somewhat more contemporaneous assessment of Minnesota law."), rev'd on other grounds, 223 F.3d 873 (8th Cir. 2000).

Here, we find the reasoning in Physicians to be persuasive since it involves the very same issues, which arise from the same contractual language that we address here.[12]  Given the "underlying mandate" of the Erie Doctrine, "that a federal court sitting in diversity reach substantially the same result as the corresponding state court," Cendant Corp. v. Forbes, 70 F. Supp.2d 339, 344 (S.D.N.Y. 1999), as well as the Minnesota Supreme Court's denial of further review in Physicians, we may not easily dismiss the import of the Court of Appeals' ruling as simply an ad hoc disposition. Given the differing results in Travertine/Physicians, and Alpine Glass, the unavoidable reality is that a litigant in the Minnesota State Courts, on an issue involving the non-assignment of an insurance proceeds provision, after a loss, could reasonably anticipate a different result than if the litigant had commenced his or her action in the

_____

[12]The Defendants attest that the insurance policy, which was considered by the Minnesota Court of Appeals in Physicians, is the same Allied insurance contract that governs the parties in this action.  See, Affidavit of Cottrell, Docket No. 59, at p. 2, ¶5.  The Plaintiffs have not contested that averment.

Federal Courts of this District.  Were we left with any reasonable doubt as to the current state of Minnesota law, insofar as it relates to the precise question presented here, we would simply recommend that the District Court apply its earlier reasoning in Alpine Glass, but we are compelled to conclude, for the reasons we have detailed, that Physicians, as a specific application of Travertine, accurately conveys the import of Minnesota law as to the legitimacy of non-assignment provisions which constrain the assignment of the rights and duties of an insurance policy.

If, however, the District Court disagrees, then the Defendants' Motion for Summary Judgment should be denied on the basis of Alpine Glass; otherwise, the Defendants are entitled to Judgment as a matter of law, as the assignments upon which the Plaintiffs rely were legally ineffectual.

NOW, THEREFORE, It is –

RECOMMENDED:

That, if the District Court concludes that its prior decision in Alpine Glass, Inc. v. Illinois Farmers Ins. Co., 2006 WL 3486996 (D. Minn., December 4, 2006),

controls the disposition of the Defendants' Motion for Summary Judgment [Docket No. 55], then the Motion should be denied, but otherwise, the Motion should be granted for reasons we detail in this Report.

BY THE COURT:

Dated:  June 13, 2007                   *s/Raymond L. Erickson*
                                        Raymond L. Erickson
                                        CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 29, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 29, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.